UNITED STATES of America, Appellee,

v.

Robert Ernest DETRICH, Ahmad Shah Nusraty and Mohammad Dawood Nusraty, Defendants,

Robert Ernest Detrich, Defendant–Appellant.

No. 1299, Docket 88–1103.

United States Court of Appeals, Second Circuit.

Argued June 24, 1988.

Decided Dec. 22, 1988.

**18**

Ira G. Greenberg, New York City (Summit Rovins & Feldesman, New York City, of counsel), for defendant-appellant.

Jerome C. Roth, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty.; Emily Berger, Asst. U.S. Atty., of counsel), for appellee.

Before NEWMAN, KEARSE and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

On this appeal we consider whether certain statements were properly excluded as hearsay in the course of a criminal trial. The hearsay rule and its exceptions—set forth in Article VIII of the Federal Rules of Evidence—pose semantic subtleties for a trial court that must rule promptly, but which an appellate court may unhurriedly decipher. Although not always understood, the rule's redeeming virtue is that it embodies lessons learned from the past, yet retains sufficient flexibility for future development.

Appellant is Dr. Robert Ernest Detrich, a dentist from Harrisonburg, Virginia. On July 13, 1987 a United States Customs Inspector at Kennedy Airport in New York found five ounces of heroin concealed in the shoulderpads of a suit in Detrich's suitcase. He had just returned from Delhi, India and denied knowledge of the narcotic, claiming that the suit had been given to him by an acquaintance in India who wanted it delivered to a relative getting married in the United States.

Detrich appeals from the March 4, 1988 judgment of the United States District Court for the Eastern District of New York (Dearie, J.) entered on a jury verdict convicting him of importation of heroin, in violation of 21 U.S.C. § 952(a) (1982 & Supp. IV 1986).

## I

Because the critical issue is whether certain statements excluded from evidence were hearsay, a brief review of the factual background is necessary to place that issue in proper perspective. In the early summer of 1987 George Hyde, a local merchant and patient, asked Detrich if he could borrow some money to help pay for a proposed retail buying trip to India. Appellant agreed to loan the money, and decided to accompany Hyde. Before departing, they went to Washington, D.C. to obtain passports and visas to enter India and Nepal. The two men then traveled to New York City where Hyde introduced Detrich to members of the Nusraty family, a group of Afghani business acquaintances. Hyde and Detrich stayed with the Nusratys in Queens, New York and purchased their airline tickets to India at a travel agency with help from Abdul Nusraty, who negotiated the price.

A party consisting of Detrich, Hyde, Abdul Nusraty, and Ahmad Shah Nusraty (Shah) left for India on July 2, 1987. Upon arrival, appellant met other members of the Nusraty family, went on shopping trips with Hyde, and swam in the hotel pool. Detrich did little else; he testified that recently publicized terrorist activities in India had cooled his interest in visiting the traditional tourist sites. Becoming bored with this routine, he decided to return to the United States earlier than he had originally planned.

Detrich stated that before he left Delhi, Shah Nusraty asked him to carry a wedding suit back to his brother Mohammad Dawood Nusraty (Dawood) who, Shah said, was getting married the following month. Shah explained that Dawood, a New York City taxi driver, would meet appellant at Kennedy Airport to pick up the suit and—in return for that favor—drive Detrich to LaGuardia Airport so he could catch his connecting flight back home to Virginia. Detrich agreed to the arrangement. Shortly before he left Delhi, a man called Waheed brought him the wedding suit. Appellant testified that Shah then shoved the suit into his suitcase, and that the two of them hurried off to the airport. Detrich stated that he had neither an opportunity nor a reason to examine the suit, which was encased in a plastic bag of the sort commonly used by dry cleaners. Goods

that Hyde had purchased for his store filled the remainder of his suitcase.

When Detrich landed in New York Customs officials were waiting for him. Drug Enforcement Agency (DEA) officials in Delhi, India had notified their counterparts in New York that they suspected his luggage contained narcotics. Appellant told Customs Inspector Eileen Manna that he did not have any gifts, and declared $400 of goods acquired overseas—the maximum amount allowed duty-free. He testified that while talking with Inspector Manna, he kept glancing out the door in an effort to spot Dawood. Upon observing Inspector Manna's examination of the suit's shoulderpads—and just before she discovered the hidden heroin—Detrich said that the wedding suit was not his.

Detrich was thereupon arrested, waived his *Miranda* rights, and stated that Shah Nusraty had asked him to deliver the suit to Dawood Nusraty for Dawood's upcoming wedding. Appellant then participated in a controlled delivery of the suit to Dawood, who was waiting outside Customs. The DEA did not tape the delivery.

Detrich contends that when he greeted Dawood—whom he recognized from his stay in Queens with the Nusratys—he asked Dawood if he was getting married. According to Detrich, Dawood replied that he was not getting married and would not take him to LaGuardia. Shortly thereafter the DEA agents arrested Dawood. He spoke with Agent Poole and gave a written statement in which he recounted his conversation with Detrich during the attempted controlled delivery. Later in the same written statement, Dawood stated "I am getting married in August and will live in Maryland." The trial court excluded this written statement from evidence.

Appellant, Shah Nusraty, and Dawood Nusraty were all charged in a three-count indictment. Count I charged them with conspiring to distribute and possess heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1982); Count II charged them with knowing and intentional importation of heroin into the United States, in violation of 21 U.S.C. § 952(a); Count III charged them with possession of heroin with intent to distribute, in violation of § 841(a)(1). Shah Nusraty was apprehended in India and awaited proceedings there at the time of appellant's trial. Dawood's motion to sever his trial from appellant's was granted over Detrich's objection.

The government's proof at trial consisted of the testimony of Customs Inspector Manna and DEA Special Agent Poole regarding the events at Kennedy Airport. Detrich presented several character witnesses and testified in his own defense. He claimed that he had been duped by Shah and Dawood into unwittingly transporting the heroin into the United States. Having excluded Dawood's written statement, the trial court also barred Detrich's attempt to cross-examine Special Agent Poole regarding Dawood's oral statements to Poole. Detrich's counsel proffered that the anticipated testimony, (what Agent Poole would say) which was excluded, would state that while Dawood was being debriefed by the DEA, he said that he was getting married the following month. The basis for exclusion was the district court's belief that Dawood's statements were inadmissible hearsay. Detrich was allowed to testify that he asked Dawood if he was getting married, and Dawood said "No." The trial judge also permitted appellant to testify that he had overheard one DEA agent tell another agent that Dawood "now changed his statement, now he is saying he is getting married."

Detrich was convicted on Count II, which charged him with importation of heroin, but acquitted on Counts I and III, the charges of conspiracy and possession with intent to distribute. The district court imposed the minimum sentence: five years of prison with no possibility of parole, four years of supervised work release, and a $50 fine. *See* 21 U.S.C. § 960(b)(2) (1982 & Supp. IV 1986). Appellant is free on bail pending resolution of this appeal.

## II DISCUSSION

### A. *Nonhearsay Statements*

Several grounds are urged for reversal, only one of which has merit. Appel-

lant argues that the trial court's evidentiary rulings erroneously excluded Dawood's statements to the DEA. In our view of the events at Kennedy, evidence of Dawood's written statement and his oral statement to Poole—"I am getting married in August"—was not hearsay and should have been admitted in evidence at the trial.

In contrast, the district court correctly excluded so much of Dawood's written statement to the DEA as recounted his conversation with Detrich. Dawood's recital of that conversation is hearsay—offered to prove the truth of the matter asserted therein—the conversation's content, that is, that Dawood *said* these statements were made.

As reversal is based on exclusion of Dawood's affirmative statement to the DEA that he was getting married, we focus our discussion on that issue. Detrich sought to introduce the excluded statement in order to support the theory of his defense, which was that he had innocently agreed to deliver the wedding suit to Dawood and did not know it contained heroin. The trial court ruled that Dawood's statement was hearsay and therefore inadmissible because it did not fall within the "catch-all" exception to the hearsay rule, *see* Fed.R.Evid. 804(b)(5)—lacking "circumstantial guarantees of trustworthiness." This characterization of Dawood's statements and the district court's decision not to except the statement from the hearsay rule are left to the sound discretion of the trial judges who deal with these matters on a daily basis. *See United States v. Rodriguez*, 706 F.2d 31, 41 (2d Cir.1983).

We begin with the general rule that hearsay evidence is not admissible. Fed.R. Evid. 802. The threshold question, of course, is whether the proffered statement is hearsay. Only if it is do the exceptions to the rule come into play. The Federal Rules of Evidence define hearsay, as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence *to prove the truth of the matter asserted."* Fed.R. Evid. 801(c) (emphasis added). No statement is inherently hearsay. Whether or not a statement is hearsay depends upon what use the offeror intends the fact-finder to make of it. We consider therefore whether Poole's description of Dawood's statement was offered to prove something relevant to this case other than the truth of the assertion it included.

It is helpful in understanding this subject to examine briefly the way in which the hearsay rule developed, and why. The earliest jurors were neighbors called to serve because they knew the facts in issue. Through the 1400's this evolved into jurors obtaining much of their knowledge of a case by going to a man's house to ask him what he knew about it, without calling him to testify. C. McCormick, *Handbook of the Law of Evidence* § 244 (E. Cleary 2d ed. 1972). For it was, as Sir Edward Coke said, trial *by jury,* not by witnesses. T. Plucknett, *A Concise History of The Common Law* 386 (2d ed. 1936). This practice of utilizing the information obtained from witnesses who were not produced at trial, *i.e.* hearsay testimony, came under increasing doubt in the 1500's and, according to Wigmore, criticism of it crystallized between 1675 and 1690. 5 J. Wigmore, *Evidence* § 1364, at 18 (J. Chadbourn ed. 1974). Thereafter, in order to ensure the reliability of testimony received and to expose sources of error at trial, several important conditions under which a witness's testimony would be received were developed: a witness must testify under oath, be personally present at the trial, and be subject to cross-examination. *See* C. McCormick § 245, at 582–83. The critical importance of cross-examination is reflected in the Sixth Amendment right to confront one's accusers. Testimony that did not meet these criteria was considered hearsay and hence excluded.

Here the dangers which the hearsay rule was designed to protect are not present. Because Dawood's statement to Poole was not offered to prove the truth of the matter asserted—that Dawood was getting married—it is not hearsay. The reason for this is plain. Were it offered for the truth of its assertion, a jury would want—if it was an issue critical to its findings—Dawood to testify in person and under oath so that it

could observe his demeanor and his cross-examination. In such a case, absent these guarantees of trustworthiness, the dangers of hearsay would be present. But, when the statement is offered to show Detrich's state of mind, Dawood's credibility is not at issue. Consequently, we examine the validity of appellant's argument regarding his offer of the statement to prove his state of mind.

Without regard to the truth of Dawood's marriage plans, the jury could draw from the statement an important inference as to what Detrich knew—or thought he knew. From this affirmative statement by Dawood to the authorities that he was getting married, a jury could infer that appellant had also been told that Dawood was getting married and therefore believed that Dawood was a prospective groom who needed the wedding suit in a few weeks. Where, as here, the statement is offered as circumstantial evidence of Detrich's state of mind, it does not fall within the definition given by Rule 801(c); because it was not offered to prove the truth of the matter asserted. *See United States v. Kohan,* 806 F.2d 18, 22 (2d Cir.1986); *United States v. Southland Corp.,* 760 F.2d 1366, 1376 (2d Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985); *United States v. Harris,* 733 F.2d 994, 1004 (2d Cir.1984). Thus, the statement could be used to establish that Detrich had previously been told about Dawood's purported betrothal and that he thought he was doing the Nusratys an innocent favor. That would, as appellants' attorney argued, corroborate Detrich's testimony that while in India, Shah had told him that Dawood was getting married. Thus, appellant's credibility would have been enhanced had the statement been admitted.

Of course, the jury might not have drawn this inference. As the district court noted, when an accomplice gives a post-arrest statement to the DEA, his own interests undercut the statement's reliability. But, as the statement was nonhearsay we need not consider, as the district court erroneously did, the exceptions to the hearsay rule. Therefore, rule 804(b)(5)'s requirement of reliability is inapplicable. Reliabili-

ty goes to the weight of the evidence, not to its admissibility. *See United States v. DiMaria,* 727 F.2d 265, 272 (2d Cir.1984). The jury will determine what weight to accord the statement at a new trial.

■ Having determined that the statement was not hearsay is not alone sufficient. To be admissible it must also be relevant. *See Anderson v. United States,* 417 U.S. 211, 221, 94 S.Ct. 2253, 2261, 41 L.Ed.2d 20 (1974). The vigor with which both sides have litigated the hearsay issue may be some indication of relevancy. *See id.* Moreover, the relevance threshold is surmounted when the evidence has "any tendency to make the existence of any fact that is of consequence to the determination more probable or less probable than it would be without the evidence." Fed.R. Evid. 401. The proffer was not only relevant to the case, but was probative of the sole contested issue—Detrich's *mens rea.*

### B. *Harmless Error*

■ The remaining inquiry is whether the evidentiary ruling was harmless error. Normally, an isolated evidentiary error would not warrant a new trial. Nevertheless, several factors in this case counsel against finding the error harmless.

First, the excluded evidence is probative on the trial's central issue, and lends support to the theory of the defense. The sole issue at trial was whether Detrich knew that the suit he was carrying through Customs contained heroin. As Shah Nusraty was in India, and Dawood had been severed from and refused to testify at appellant's trial, the only way that appellant could prove that he did not know about the heroin was to take the stand and say so. Had the excluded statement been admitted, it might have enhanced appellant's credibility on the crucial issue of his *mens rea* by increasing the plausibility that he had been taken in by the wedding story. We cannot find it harmless to exclude a statement that "would have supported the main theory of the defense." *Harris,* 733 F.2d at 1005. Nor is the error rendered harmless by the trial court permitting Detrich to testify re-

garding his conversation with Dawood and his having overheard DEA agents say that Dawood had changed his story and that he now admitted that he was getting married. *See Kohan*, 806 F.2d at 22. For, as indicated, Detrich's credibility may have been much reduced, absent the corroborative effect of the excluded statement. Further, appellant's right to present his defense includes the right to place before the jury this secondary type of evidence. *See Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988).

Second, the error's harm is magnified by comparison with the scanty evidence upon which appellant was convicted, in what we consider a very close case. The government could not establish the element of Detrich's knowing importation directly, and was therefore forced to do so circumstantially. Although the evidence was sufficient to support the verdict, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), it was far from overwhelming. *See DiMaria*, 727 F.2d at 272 (case for admitting statements is particularly strong where government asks the jury to presume guilty knowledge from possession of the fruits of the crime). When the government's proof relies primarily on circumstantial evidence, trial errors tend to acquire greater significance. It takes less to tip the scales. *See Rosario*, 839 F.2d at 925 (quoting *United States v. Agurs*, 427 U.S. 97, 113, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976) ("[I]f the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.")). *But cf. United States v. Lawal*, 736 F.2d 5, 9 (2d Cir.1984) (exclusion of admissible hearsay evidence harmless where the government presented strong countervailing evidence). Thus, the error in excluding Poole's anticipated testimony regarding Dawood's affirmative statement that he was indeed getting married was not harmless.

Moreover, we note that the jury acquitted Detrich on two of the three counts on which he was charged. Although we cannot be certain that the admission of the statement would cause a jury to find appel-

lant "not guilty" on the remaining count, the possibility in this close case is strong enough to require reversal and a remand for a new trial. *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

## CONCLUSION

For the reasons stated, the judgment of conviction is reversed and the case remanded to the district court for a new trial.

*REVERSED AND REMANDED.*