UNITED STATES of America, Appellee,

v.

Mohammad Dawood NUSRATY,
Defendant–Appellant.

No. 250, Docket 88–1141.

United States Court of Appeals,
Second Circuit.

Submitted Oct. 20, 1988.

Decided Feb. 7, 1989.

William Lupo, Brooklyn, N.Y. (Jane K. Falcon, Brooklyn, N.Y., of counsel), for defendant-appellant.

Emily Berger, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, United States Attorney for E.D.N.Y., Jerome C. Roth, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Before LUMBARD, CARDAMONE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Mohammad Dawood Nusraty appeals from a judgment of the United States District Court for the Eastern District of New York, Dearie, *Judge*, convicting him, after a jury trial, of 1) conspiring to possess heroin with intent to distribute, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), 846; 2) importing heroin into the United States, or aiding and abetting such importation, 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(2)(A), and 18 U.S.C. § 2; and 3) possessing heroin with intent to distribute, or aiding and abetting such possession, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), and 18 U.S.C. § 2. Because we find that there was insufficient evidence to support the convictions, we reverse. We remand to the district court, with an instruction to enter a judgment of acquittal on all three counts.

## BACKGROUND

The facts of this case are relatively straightforward. At the end of June 1987, Dr. Robert Detrich, a Virginia dentist, agreed to travel on vacation to India with the appellant's uncle, Abdul Nusraty, the appellant's brother, Shah, and a third man, George Hyde. The night before the four men departed for India, Detrich attended a party at Abdul Nusraty's home in Queens, New York. At the party he met the appellant, Dawood Nusraty.

On July 2, 1987, Detrich and the other three men flew to India. Although Detrich was originally scheduled to return on July 18, he decided to return a few days earlier. According to Detrich's testimony at trial, before Detrich left India the appellant's brother, Shah, asked him to carry a new suit back to the United States to deliver to appellant for him to use in his religious wedding ceremony which was planned for August 1987.

Detrich arrived back at John F. Kennedy International Airport on July 13, 1987. At Customs, a careful search of Detrich's suitcase revealed that packets of heroin were secreted in the new suit that Detrich was

carrying. The heroin weighed approximately 131 grams, and was of 29% purity. At trial, a federal narcotics agent testified that the heroin had a wholesale value of approximately $10,000.

Detrich was immediately arrested, and placed in the custody of agents of the U.S. Drug Enforcement Administration ("DEA"). After agreeing to make a statement to the agents, he denied having any knowledge of the hidden heroin. Detrich told the agents that he was to deliver the suit to Dawood Nusraty, whom he expected to meet him outside Customs. In an effort to cooperate, Detrich agreed to undertake a "controlled delivery" of the heroin to Nusraty, under the surveillance of the agents.

Detrich gave the agents Nusraty's name and physical description. The agents fanned out across the airport to look for Nusraty. Agent David Poole spotted him in the lobby area outside Customs, watching passengers as they left Customs. Testimony by Poole and other agents at trial indicated that Nusraty, a taxi driver, had parked his cab in a taxi staging area nearby. His taxi—unlike the others in the staging area, which were called up to the terminal on a rolling basis—was locked, and was parked about fifty feet behind the other cabs, against a fence.

At trial, Agent Poole testified that he observed Nusraty in the lobby for approximately five minutes. He saw him leave the lobby for a moment, and then return through another door. Shortly after Nusraty returned, Detrich emerged from Customs, carrying the suitcase which contained the new suit. As Detrich approached Nusraty, they greeted each other, and then walked together out of the terminal building. (They were followed by five or six undercover agents.) The two men walked up a ramp that led away from the terminal, towards the main roadway.

The two men held a short conversation as they made their way out of the terminal and up the ramp. As the government noted in its summation to the jury, there was, in the record, no real dispute over the substance of that conversation, since Detrich's testimony and Nusraty's post-arrest written statement were, in most respects, in accord. Detrich's testimony at trial indicated that, of the two, he did most of the talking. He testified that he first mentioned to Nusraty that he had heard Nusraty was to be married soon; Nusraty said that he was not getting married. Detrich then said that he had a suit to give Nusraty for his wedding. Again, Nusraty said that he was not getting married. Detrich then asked if the appellant's brother Shah had not told the appellant that Detrich was bringing him a suit. Nusraty replied in the negative. Finally, Detrich asked whether the appellant would drive him to LaGuardia Airport, as Shah had promised. The appellant refused; instead, he pointed Detrich towards the line of waiting taxis, and began to walk away. Shortly thereafter, both men were detained by the federal agents who had been following them, and Nusraty also was arrested. At no time did Nusraty take possession of the subject suit or suitcase from Detrich.

At trial, the government endeavored to show that Nusraty decided not to take the suit because he had observed the agents following them. The testimony on this point was, in part, contradictory. Two agents testified that both Detrich and Nusraty stopped at one point, turned around, and saw the agents following them. Detrich, on the other hand, testified that he never turned around, but that Nusraty seemed to be glancing past him as they talked.

After the two men were arrested, they were taken to the DEA offices at the airport for questioning. Nusraty, questioned separately from Detrich, agreed to make a written statement. Nusraty's written statement differed from Detrich's earlier statement and testimony at trial in one significant respect: Nusraty claimed that he was at the airport to look for long-distance taxi passengers and that it was purely a coincidence that he was in the airport lobby when Detrich emerged from Customs.

Consistent with Nusraty's written statement, defense counsel took the position throughout the trial that it was merely

coincidence that the two men had met at the airport that day. The jury, apparently rejecting Nusraty's claim of coincidence, found him guilty on all three counts charged. He was sentenced to five-year terms of imprisonment on Counts One and Three, and to a six-year term on the importation charge. All the sentences were to run concurrently. On appeal, Nusraty urges three grounds for reversal: 1) the evidence was insufficient to support his convictions, 2) the prosecutor referred repeatedly at trial to Dr. Detrich's earlier conviction for importation of the heroin, and 3) appellant was denied effective assistance of counsel. We note that the frequent mention of Detrich's conviction—which recently was reversed on appeal on evidentiary grounds, *see United States v. Detrich*, 865 F.2d 17 (2d Cir.1988)—may have had a significant prejudicial effect at Nusraty's trial, *see United States v. Dougherty*, 810 F.2d 763, 767 (8th Cir. 1987). However, we need not address that issue or the issue of the effectiveness of appellant's representation at trial, since we believe that there was insufficient evidence that the appellant knowingly took part in the crimes charged.

## DISCUSSION

Time and again this court has emphasized that a "defendant challenging the sufficiency of the evidence carries 'a very heavy burden.' " *United States v. Young*, 745 F.2d 733, 762 (2d Cir.1984) (quoting *United States v. Carson*, 702 F.2d 351, 361 (2d Cir.), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983); *United States v. Losada*, 674 F.2d 167, 173 (2d Cir.), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982)), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). A conviction must be allowed to stand if, "after viewing the evidence in the light most favorable to the prosecution," the reviewing court finds that *"any rational trier of fact could have found the*

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

### I. Sufficiency of the Evidence of Conspiracy

This standard of deference is especially important when reviewing a conviction of conspiracy. As one commentary noted:

Conspiracy is by nature a clandestine offense. It is improbable that the parties will enter into their illegal agreement openly; it is not necessary, in fact, that all the parties ever have direct contact with one another, or know one another's identity, or even communicate verbally their intention to agree. It is therefore unlikely that the prosecution will be able to prove the formation of the agreement by direct evidence, and the jury must usually infer its existence from the clear co-operation among the parties.

*Developments in the Law—Criminal Conspiracy*, 72 Harv.L.Rev. 920, 933 (1959) (footnotes omitted); *see Young*, 745 F.2d at 762.

We note in this regard that this court has held that " 'once a conspiracy is shown to exist, the "evidence sufficient to link another defendant to it need not be overwhelming." ' " *United States v. Ciambrone*, 787 F.2d 799, 806 (2d Cir.) (quoting, *inter alia*, *United States v. Provenzano*, 615 F.2d 37, 45 (2d Cir.), *cert. denied*, 446 U.S. 953, 100 S.Ct. 2921, 64 L.Ed.2d 810 (1980); *United States v. Head*, 546 F.2d 6, 9–10 (2d Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977)), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986). That principle is inapposite here, however, since the person who would have provided the critical link to Nusraty in a chain of conspiracy—Dr. Detrich—was himself acquitted of conspiracy. *See Detrich*, 865 F.2d at 19.[1]

---

1. Originally, Detrich was indicted with Nusraty on the same three counts of conspiracy, importation, and possession with intent to distribute. *Detrich*, at 19. The two defendants' cases were severed, and Detrich was tried first. Detrich

was acquitted on the conspiracy and possession counts, but was convicted of importation. *Id.* at 19. On appeal, however, his conviction was reversed by a separate panel of this court, and the case was remanded for a new trial. The

Our review of the sufficiency of the evidence of conspiracy must look to both direct and circumstantial evidence of an agreement among the alleged co-conspirators. The agreement between the party charged and his co-conspirators is the gist of the crime of conspiracy. *E.g., United States v. Bayer,* 331 U.S. 532, 542, 67 S.Ct. 1394, 1399, 91 L.Ed. 1654 (1947) (the essence of conspiracy "is in the agreement or confederation to commit a crime"); *United States v. Borelli,* 336 F.2d 376, 384 (2d Cir.1964) (Friendly, C.J.) (although it is "often necessary in conspiracy cases for the agreement to be proved by inference from acts, the gist of the offense remains the agreement"), *cert. denied,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965); *see also* Arens, *Conspiracy Revisited,* 3 Buffalo L.Rev. 242, 243–46 (1954) (though it evolved over the centuries, the crime of conspiracy always centered on the parties' agreement); *Developments—Criminal Conspiracy, supra,* at 922, 925–27.

■■■ The "government's proof of an agreement 'does not require evidence of a formal or express agreement; it is enough that the parties have a tacit understanding to carry out the prohibited conduct.'" *United States v. Rubin,* 844 F.2d 979, 984 (2d Cir.1988) (quoting *United States v. Wardy,* 777 F.2d 101, 107 (2d Cir.1985), *cert. denied,* 475 U.S. 1053, 106 S.Ct. 1280, 89 L.Ed.2d 587 (1986)). To be convicted, a conspirator, if he agreed to join an unlawful endeavor, need not have known all of the details of the broader conspiracy at the time he agreed to enter the scheme. *United States v. Feola,* 420 U.S. 671, 692, 95 S.Ct. 1255, 1267, 43 L.Ed.2d 541 (1975); *United States v. Martino,* 759 F.2d 998, 1003 (2d Cir.1985). Nevertheless, to be guilty of conspiracy the defendant must at least have had knowledge that a common endeavor existed. *See United States v. Falcone,* 311 U.S. 205, 210, 61 S.Ct. 204, 206, 85 L.Ed. 128 (1940). In other words, there must "be some evidence from which

it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Gaviria,* 740 F.2d 174, 183 (2d Cir.1984) (citing *United States v. Soto,* 716 F.2d 989, 991 (2d Cir. 1983)).

■■■ Here, there was no direct proof of any knowing agreement between Nusraty and his alleged co-conspirators. The circumstantial evidence upon which the government relies to support Nusraty's conviction is his appearance at the airport, where he met with Detrich. However,

> [f]or a single act to be sufficient to draw an actor within the ambit of a conspiracy to violate the federal narcotics laws, there must be independent evidence tending to prove that the defendant in question had some knowledge of the broader conspiracy, or the single act itself must be one from which such knowledge may be inferred.

*United States v. DeNoia,* 451 F.2d 979, 981 (2d Cir.1971) (per curiam); *see also United States v. Calbas,* 821 F.2d 887, 892 (2d Cir.1987) (evidence of defendant's knowing involvement sufficient to support conspiracy conviction), *cert. denied,* —— U.S. ——, 108 S.Ct. 1114, 99 L.Ed.2d 275 (1988).

The government urges that Nusraty went to the airport to meet Detrich. The suspicious circumstances of Nusraty's presence at the airport, and the likelihood that Nusraty *knew* Detrich would be there certainly support the government's argument that Nusraty's encounter with Detrich was prearranged and not coincidental.

Suspicious circumstances, however, are not enough to sustain a conviction for conspiracy. *See United States v. Tyler,* 758 F.2d 66, 68–70 (2d Cir.1985) (although there was evidence of defendant's involvement in a drug sale, there was insufficient evidence of an agreement between the defendant and the dealer); *Young,* 745 F.2d at 764

panel found that it was error for the district court to exclude as hearsay evidence that Nusraty told the federal agents that he was going to be married. The panel concluded that the evidence should have been admitted because these

statements by Nusraty could have bolstered Detrich's defense that he brought the suit into the country as an innocent favor to the Nusraty family, not knowing that the suit contained heroin. *Id.* at 20–22.

(rifle hidden in apartment and suspicious wealth and dealings showed only that the defendant "was aware of the conspiracy and associated with some of its members, ... [not] that she was a knowing participant in it"); *Gaviria*, 740 F.2d at 183–84 (presence of cocaine in car driven by defendant, and her contact with co-conspirators, were insufficient evidence of a knowing agreement with the requisite specific intent). Even accepting the government's argument that Nusraty was waiting for Detrich at the airport, that single circumstance and the context in which it occurred are not sufficient evidence to show Nusraty's knowing involvement in the conspiracy charged. Simply waiting for someone at an airport, even under such suspicious circumstances as exist here, is not, by itself, an act from which knowing guilty involvement can reasonably be inferred. Although, as we have noted, a defendant's knowing agreement to join a conspiracy must, more often than not, be proven through circumstantial evidence, *see, e.g., United States v. Manton*, 107 F.2d 834, 839 (2d Cir.1939), *cert. denied*, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012 (1940), and even though we must view all the evidence as pieces of a unified whole, *see, e.g., Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the circumstantial evidence here was simply too thin to warrant an inference of guilty knowledge on the part of Nusraty.

Nor is this a case in which there was a pattern of acts or incriminating physical evidence reflecting the defendant's participation in a criminal scheme. *See United States v. Torres*, 845 F.2d 1165, 1168 (2d Cir.1988); *United States v. Castro*, 813 F.2d 571, 578 (2d Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987); *United States v. Pedroza*, 750 F.2d 187, 198–99 (2d Cir.1984); *see also Calbas*, 821 F.2d at 892 (defendant's sustained involvement in a number of drug transactions supported conspiracy conviction). Nor are we presented with evidence of any inculpatory conversations between Nusraty and his alleged co-conspirators. *See United States v. Chang An–Lo*, 851 F.2d 547, 554–56 (2d Cir.), *cert. denied*, — U.S. —,

109 S.Ct. 493, 102 L.Ed.2d 530 (1988); *United States v. Young*, 822 F.2d 1234, 1240 (2d Cir.1987). Moreover, there is no evidence to show that Nusraty ever took possession, either actual or constructive, of the heroin. *See, United States v. Rios*, 856 F.2d 493, 496–97 (2d Cir.1988); *United States v. Garcia*, 848 F.2d 1324, 1336 (2d Cir.1988), *cert. granted sub noms. Gomez v. United States, Chavez–Tesina v. United States*, — U.S. —, 109 S.Ct. 782, 102 L.Ed.2d 773 (1989); *United States v. Tussa*, 816 F.2d 58, 63–64 (2d Cir.1987). Nor was there any evidence that Nusraty ever saw drugs, or was present at a transfer thereof. *See Martino*, 759 F.2d at 1003–04 (defendant's presence in parking lot, coupled with elaborate coming and going, while narcotics were openly passed between co-conspirators was probative of defendant's knowing involvement in the conspiracy); *United States v. Diez*, 736 F.2d 840, 843 (2d Cir.1984) (defendant witnessed transfer of drugs).

■ Absent these circumstantial indicia of knowledge, Nusraty's conviction rests principally on his presence at the airport, and on his association with his uncle, his brother, and Detrich, some or all of whom may have been links in a chain of narcotics distribution. However, mere presence at the scene of an aborted drug transfer cannot by itself support a conviction of conspiracy, *United States v. Burgos*, 579 F.2d 747, 749 (2d Cir.1978); *see United States v. Brown*, 776 F.2d 397, 403 (2d Cir.1985), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986); *Pedroza*, 750 F.2d at 198, for mere presence is not enough to prove knowing conspiratorial agreement, *see United States v. Vilhotti*, 452 F.2d 1186, 1189 (2d Cir.1971), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1314, 31 L.Ed.2d 582 (1972), 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972). By the same token, mere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement. *See, e.g., Rios*, 856 F.2d at 496; *Young*, 745 F.2d at 764; *United States v. Barlin*, 686 F.2d 81, 90 (2d Cir.1982) (citing *Provenzano*, 615 F.2d at 45–46).

The government argues that Nusraty's post-arrest statement to the federal agents contained assertions that were falsely exculpatory, and, if so found, offered a sufficient basis to infer Nusraty's knowing involvement in the scheme. Nusraty's key disavowal—his statement that he met Detrich by coincidence, rather than by design—obviously was not believed by the jury. Once found to be a false exculpatory statement, it did have probative value as to consciousness of guilt. While it is true that such statements do have some "independent probative force," *United States v. Durrani*, 835 F.2d 410, 424 (2d Cir.1987), it is important to note that "[f]alse exculpatory statements are not admissible as evidence of guilt, but rather as evidence of consciousness of guilt," *United States v. Di Stefano*, 555 F.2d 1094, 1104 (2d Cir.1977). Standing alone, a false exculpatory statement by appellant could have proved that Nusraty, once arrested, knew that he was caught up in a situation involving criminal activity. *See United States v. Morales*, 577 F.2d 769, 772–73 (2d Cir.1978). However, his statement did *not* establish, nor was it sufficient for an inference to be drawn, that Nusraty knew of the conspiracy charged.

We conclude that any false exculpatory statement by Nusraty, when considered in conjunction with the totality of the evidence, was insufficient to support his convictions. As this discussion reflects, Nusraty's mere presence at the airport, and even his association with Detrich, are of only limited probative value; and his false exculpatory statement simply offers evidence from which it could be inferred that the appellant, under the circumstances of his arrest, surmised he was implicated in some sort of criminal activity. As this court stated in *United States v. Johnson*, 513 F.2d 819 (2d Cir.1975):

> [F]alsehoods told by a defendant in the hope of extricating himself from suspicious circumstances are insufficient proof on which to convict where other evidence of guilt is weak and the evidence before the court is as hospitable to an interpretation consistent with the defendant's innocence as it is to the Government's theory of guilt.

*Id.* at 824 (quoted in *Gaviria*, 740 F.2d at 184).

Since the government's case otherwise turned essentially only on the appellant's presence at the airport and his meeting with Detrich, and in light of the circumstances under which Nusraty's statement was given—shortly after arrest, when Nusraty likely felt the need to dissociate himself (for whatever reason) from Detrich as much as possible—we conclude that the appellant's false exculpatory statement here "fail[s] to save an otherwise inadequate case." *See Martino*, 759 F.2d at 1005.

In sum, applying the deferential standard of review established by *Jackson v. Virginia* and its progeny, we find that there was insufficient evidence in this case from which any rational trier of fact could find beyond a reasonable doubt that appellant knowingly agreed to join or participate in a scheme to smuggle heroin into the United States.

II. Sufficiency of the Evidence on the Substantive Counts

We turn next to appellant's convictions on the charges of 1) the importation of a controlled substance, or aiding and abetting therein, and 2) possession of a controlled substance with the intent to distribute, or aiding and abetting therein.

A. *Criminal Liability on the Substantive Counts As a Co-conspirator*

Apropos of the substantive counts, the government argues that the appellant, by entering into and affirmatively associating himself with a conspiracy to import drugs, was criminally liable on the substantive charges regardless of which member of the conspiracy had possession of the drugs.

While it is true that "a member of [a] conspiracy ... [can be convicted] of [a] substantive offense ... committed by his co-conspirator in furtherance of the conspiracy," *United States v. Pugliese*, 712 F.2d 1574, 1583 (2d Cir.1983); *see Pinker-*

ton v. United States, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946); *United States v. Cambindo Valencia*, 609 F.2d 603, 639 (2d Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980); *United States v. Stassi*, 544 F.2d 579, 584 (2d Cir.1976), *cert. denied*, 430 U.S. 907, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977), here, there was insufficient evidence to implicate Nusraty in the charged conspiracy, *cf. Pinkerton*, 328 U.S. at 645, 66 S.Ct. at 1183, and further, Detrich, his alleged co-conspirator, was acquitted of conspiracy at his trial, so this basis of liability on the substantive counts must fail.

### B. *Criminal Liability for Possession or Importation*

■ In assessing whether Nusraty could have been liable for the possession, or the importation, of the drugs, we must note that there is no record evidence, direct or circumstantial, to show that Nusraty ever had dominion or control over the drugs.

By the terms of the statute, a conviction for *possession* of a controlled substance with intent to distribute requires that the defendant have had possession—either actual or constructive—of the controlled substance. *See, e.g., United States v. Thompson*, 700 F.2d 944, 952 (5th Cir.1983); *see also Tussa*, 816 F.2d at 63. Here, there was no evidence that Nusraty ever had actual possession of heroin. Nor can the government point to any evidence other than Nusraty's involvement in the alleged conspiracy to show that Nusraty exercised constructive possession—*i.e.,* " 'knowingly ha[d] the power and the intention ... to exercise dominion and control' "—over the heroin. *See United States v. Aiello*, 864 F.2d 257, 263 (2d Cir.1988) (quoting *United States v. Tribunella*, 749 F.2d 104, 111–12 (2d Cir.1984); *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973)).

■ To convict a defendant of *importing* a controlled substance, the government must show, *inter alia,* that the defendant either imported the substance or caused it to be imported. *See United States v. Samad*, 754 F.2d 1091, 1096 (4th Cir.1984);

*United States v. Koua Thao*, 712 F.2d 369, 371 (8th Cir.1983). There was no evidence here that the appellant himself imported the drugs. Nor was there evidence that the appellant caused the drugs to be imported; to prove this count, it was critical for the government to show a nexus between Nusraty and the charged scheme to import the heroin, and as has been discussed, there was insufficient evidence to prove that Nusraty joined such a scheme.

### C. *Evidence of Aiding and Abetting*

Finally, we must examine whether there was sufficient evidence that Nusraty aided and abetted a principal in the possession of the heroin with intent to distribute or in the importation of the heroin. The jury was adequately instructed as to the charge of aiding and abetting with respect to Counts Two and Three, and so, drawing all inferences in favor of the government, we must examine whether the convictions can be sustained on these grounds.

■ As this court recently observed, to convict a defendant under a theory of aiding and abetting a crime the government must show, *inter alia,* " 'that the person charged joined the venture, shared in it, and that his efforts contributed towards its success.' " *Aiello*, at 263 (quoting *United States v. Wiley*, 846 F.2d 150, 154 (2d Cir.1988); *United States v. Zambrano*, 776 F.2d 1091, 1097 (2d Cir.1985)). Like conspiracy, the offense of aiding and abetting requires that the defendant have knowingly involved himself in a criminal act. Though the offense of conspiracy requires that the defendant have agreed to a criminal act, and the crime of aiding and abetting the commission of a substantive offense requires that the defendant have *furthered* the criminal act, *see Tyler*, 758 F.2d at 70–71, a conviction for either of these crimes requires that the defendant have *known* a crime was to be committed, *United States v. Gallishaw*, 428 F.2d 760, 763 (2d Cir.1970).

■ As we have discussed above in relation to the appellant's conviction for conspiracy, the evidence here was insufficient

to establish that Nusraty *knew* of the scheme to import the heroin. Similarly, the evidence could not support a conviction for aiding and abetting since there was not a sufficient showing that Nusraty knew of the commission of a substantive offense. As we noted in *United States v. Mariani*, 539 F.2d 915 (2d Cir.1976):

> It is a basic principle of criminal law that to be convicted of aiding and abetting, more than "mere presence" at the scene is required. Rather, the defendant must be shown to have knowingly associated with and participated in the criminal venture in a manner designed to accomplish its goal.

*Id.* at 919; *see United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938) (L. Hand, C.J.) (to be convicted of aiding and abetting, defendant must have had a "purposive attitude" towards the criminal venture).

The government's proof need not, of course, have been so strong as to "exclude all possible inferences but those of guilt." *United States v. Lubrano*, 529 F.2d 633, 636 (2d Cir.1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 61, 50 L.Ed.2d 78 (1976). Nevertheless, for the reasons stated above, the key evidence against the appellant—that he was at the airport when Dr. Detrich arrived and joined him, and that he subsequently gave a false statement about his reasons for being there—does not warrant an inference that Nusraty knew he was involved in the commission of a crime to possess or to import drugs. *See Wiley*, 846 F.2d at 154 (" '[A] general suspicion or knowledge [of illegality is] ... not enough.' " (quoting *Zambrano*, 776 F.2d at 1097)).

### CONCLUSION

We recognize that a question of sufficiency of evidence is typically *sui generis*, turning closely on the specific facts of an individual case. *See Lubrano*, 529 F.2d at 636. Further, it is important that we, as an appellate court, impinge on the discretion of the trier of fact "only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

Since we conclude that the evidence herein was insufficient to support the appellant's convictions for conspiracy, importation, and possession with intent to distribute, we must reverse his convictions on all three counts, and remand to the district court, *see Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1 (1978); *see also Lockhart v. Nelson*, — U.S. —, 109 S.Ct. 285, 290, 102 L.Ed.2d 265 (1988), with an instruction to enter a judgment of acquittal on each count.

REVERSED AND REMANDED.