**UNITED STATES of America**

v.

**Olayinka SADIQ, Defendant.**

**No. CR 91–615.**

United States District Court,
E.D. New York.

Feb. 3, 1992.

Andrew J. Maloney, U.S. Atty. (Jodi Levine Avergun, Asst. U.S. Atty., of counsel), Brooklyn, N.Y., for plaintiff.

Olubukola Adetula (David W. Ely, of counsel), East Orange, N.J., for defendant.

MEMORANDUM AND ORDER

NICKERSON, District Judge.

Defendant Olayinka Sadiq was found guilty by a jury on count one of a superseding indictment charging her with conspiring in April and May of 1991 to import heroin into the United States, in violation of 21 U.S.C. §§ 952 and 963. She has moved under Rule 29(c) of the Federal Rules of Criminal Procedure for a judg-

ment of acquittal on the ground that there was insufficient evidence to sustain the verdict.

■ The court views the evidence in a light most favorable to the government, assumes the credibility of the government witnesses, draws all reasonable inferences in its favor, and determines whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Salerno,* 868 F.2d 524, 530 (2d Cir.), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989).

As the government concedes, no one testified to having seen or heard defendant do or say anything that showed she joined the conspiracy charged. The question is whether the jury could infer beyond a reasonable doubt that she joined from testimony and other evidence showing the existence of a conspiracy and from physical evidence recovered by agents.

### I.

In substance the evidence showed the following.

■ Co-defendant Rose Lenena recruited four women to go to Indonesia and bring back heroin. One of the four, Rose White, a co-defendant, testified for the government at trial. In April 1991, Lenena met with the four at her shop in Chicago, Illinois, and told them that they would be well paid, $20,000 to defendant Rose White and $10,000 to each of the other three. A woman named Sade, the organizer of the conspiracy, came from New York to Chicago to meet the prospective couriers and to get photographs of them.

On May 3, 1991, Lenena supplied the four women with passports and roundtrip tickets from Chicago to New York's LaGuardia Airport and then on to Indonesia. They then flew to LaGuardia Airport where Sade met them and took them in a taxicab to Kennedy International Airport.

In the taxi, Sade handed White a plastic bag with $8,000, explaining that it was for the women's expenses in Indonesia. Sade also gave White two slips of paper. One had the name of the Indonesian hotel to which the women were supposed to go. The other had a telephone number, (718) 284-8242, and an address, 500 Flatbush Avenue, Brooklyn, to which they were supposed to deliver the heroin on their return. Sade told White that the four could expect to be away for about ten days and that a man named "Bobby" would contact them in Indonesia concerning delivery to them of the drugs.

The women arrived in Indonesia on May 5, 1991. On May 14, 1991, Sade called White to say that there was a delay and that they would have to remain in Indonesia a little longer. About five days later, or about May 19, 1991, someone calling himself "Richard", and describing himself as a friend of Sade, telephoned White from Bangkok, Thailand, and said that he and not "Bobby" would be coming, that there would be "another delay" because "he was having trouble getting out of Bangkok with the stuff", and that "there were evil spirits at the airport."

Around May 23, 1991, Richard arrived in Indonesia and told White that he had had "problems getting out of the airport with the stuff." Richard brought two suitcases in which he packed items the women had bought in Indonesia along with the heroin.

Shortly before leaving Indonesia on May 28, 1991 White received a call from Sade in New York stating that either she or her daughter would be at the 500 Flatbush Avenue address to meet them. White told Sade that all four women wanted their money when they got to New York. Sade agreed, but said "it would be hard to get all that money in one large sum."

White and another of the women, Linda Santos, were arrested upon their arrival in the United States, each with a suitcase containing more than 14 pounds of heroin.

They agreed to cooperate with the Customs Agents and to participate in a controlled delivery to 500 Flatbush Avenue, Brooklyn. They went there, and a woman later identified as Florence Brown, a co-defendant, came out to meet them. Brown said she had been waiting all day for them,

took one of the suitcases, tried to re-enter the building, and was arrested.

Agents then executed a search warrant for Apartment 2 in the building. They found an April Sprint telephone bill in the name of Kofo Oluwatoyin for the same telephone number—(718) 284–8242—as that previously given by Sade to White. The bill showed calls to Lenena's place of business and home, and to telephone numbers in Thailand, Nigeria, Florida, and other places. Another agent testified that, based on his experience in narcotics investigations, the apartment appeared to be "a safe house to drop drugs, stay overnight, then get out."

Thereafter, the agents executed a search warrant for an apartment at 1118 E. 40th Street, Brooklyn. There they found five adults and two children, one an infant, in the bedroom. Pursuant to the warrant, the agents seized numerous documents, including Sadiq's wallet found underneath a mattress on the floor where her infant was sleeping. The wallet contained Sadiq's passport and six Western Union money transfers listing six different senders, including one in the name of Sadiq.

The transfers were made payable to two different payees at the Siam Commercial Bank in Bangkok, Thailand, and sent between May 9, 1991 and May 14, 1991. The transfer sent in the name of Sadiq was for $5000 and gave the sender's address as 500 Flatbush Avenue, Brooklyn.

One of the transfers showed the sender's name as "Kofo Oluwatoyin". A defense witness, Olalekan Yemitan, testified that this person was his aunt and that both she, Sadiq, and several others had been temporary members of a group living at 1118 E. 40th Street on May 29, 1991.

From a closet off the bedroom in which seven people were found an agent seized a plastic bag with the name of a clothing store, "Michael's", printed on it. It contained $49,800. The agents found six receipts from "Michael's". One was in the name "Yinka", for merchandise bought in February 1991 and paid for in cash. Three such receipts were in the name of "Mary", and two in the name of "Kate".

In deciding whether or not to set aside the verdict the court does not determine whether the evidence showed that Sadiq had been engaged in some sort of illegal activity, perhaps even narcotics activity. The court focuses on the specific crime with which she is charged, that of joining in the conspiracy to import twenty-eight pounds of heroin.

The government introduced proof from which the jury could find, beyond a reasonable doubt, that such a conspiracy existed between Lenena, White, the other couriers, and others. The issue is whether the evidence established the proposition of fact that Sadiq was a knowing member of that specific conspiracy as so probable that a reasonable juror could treat it as true beyond a reasonable doubt.

No single step of proof establishes this proposition even as probable. In other words, as noted above, there was no testimony that Sadiq did, said, or wrote anything from which one could directly infer that she was a member of the conspiracy. The decision whether to sustain the verdict requires an examination of various lines of proof, each consisting of two or more related logical steps, that is, of a series of inferences, each more or less probable, and in each of which a proposition of fact which is asserted as true is a premise in the next step of proof. The analysis thus involves logical reasoning and an estimate of probabilities. *See* Michael and Adler, *The Trial of an Issue of Fact,* 34 Colum.L.Rev. 1224, 1462 (1934) (analyzing the process of judicial proof).

The key to the government's contention that the evidence showed Sadiq's membership in the conspiracy is the fact that on May 14, 1991, she signed as sender of a Western Union money transfer for $5000 directing the check to be delivered to the Siam Commercial Bank payable to "Haja Mulikatu Tejan". This is the only thing Sadiq did that is shown by direct evidence. Her signature admittedly appears on the document. The government says that this $5000, together with the five money transfers found in Sadiq's wallet, made up the

funds needed to pay Bobby or Richard to take the heroin from Bangkok to Indonesia.

None of the six transfers directed payment to anyone whom the evidence identified as Bobby or Richard. The payee of three of them was "Mrs. Almamy Berte", and of the other three was "Haja Mulikatu Tejan". The government introduced no evidence to show who, if anyone, collected the funds at the bank. But the government says that it is a fair inference that someone did collect that money and turned it over to Bobby or Richard, and that the reason they delayed delivery of the heroin to Indonesia was because they were awaiting funds to pay their fees as couriers.

The government's reasoning is as follows. The transfers were made between May 9, 1991 and May 14, 1991 at a time when Richard and Bobby were in Bangkok. On May 14, 1991, Sade called White to say there was a delay. About May 19, 1991 Richard called White to say there would be "another delay" because he was having trouble getting out of Bangkok because of "evil spirits" at the airport.

The government says that the jury could conclude that Richard did not tell White the truth and that the delay was not because of any difficulties they were having with inspectors at the Bangkok airport. Rather, the government argues, Bobby and Richard chose not to leave that city without money in their hands to pay their fees for acting as couriers.

The government does not say why it should be assumed that they had not told White the truth. If they were simply waiting for their own fees, it seems strange that five days after the transfers were made, Richard told White of another delay. Moreover, Richard did not arrive in Indonesia with the drugs until May 23, 1991, nine days after the last transfer of funds on May 14, 1991. He attributed the delay to problems getting the heroin out of the airport. The fact that Richard did not arrive until some nine days after the last money transfer was made also casts doubt on the inference the government seeks to draw.

Running through the government's argument is the premise that the occupants of the 1118 E. 40th Street apartment were at that time engaged in only one transaction in Bangkok, Thailand, namely, the drug conspiracy charged here. If indeed this premise were accepted as true, the government's argument would be more persuasive than it is. But the government's proof by no means established that premise. At least some of those occupants may well have had other dealings, whether licit or illicit, that occasioned transactions in Bangkok.

The government suggests that the presence in the apartment of the plastic bag containing $49,800 justifies an inference that this money was for payment of courier fees to White and the other three women who accompanied the heroin back to the United States. That is a possible inference, but hardly a compelling one. Moreover, even if the inference is justified, the plastic bag from "Michael's" clothing store was no more likely to have been used by Sadiq than by two other women in the apartment who also made purchases from that store.

The government had the burden of submitting evidence from which a reasonable juror could find beyond a reasonable doubt, not that Sadiq had been engaged in some kind of drug or other illegal activity, but that she became a member of the specific conspiracy to import twenty-eight pounds of heroin.

The fact that drugs have become such a scourge in this country does not relieve the government of proving the precise charge it brings or of meeting the standard of proof beyond a reasonable doubt. It is perhaps impossible to quantify this standard in any precise way. "[N]o one has yet invented or discovered a mode of measurement for the intensity of human belief." 9 Wigmore, Evidence § 2497 (Chadbourn rev. 1981), p. 414; *see also United States v. Fatico*, 458 F.Supp. 388, 409–411 (E.D.N.Y. 1978) (Weinstein, J.), *aff'd*, 603 F.2d 1053 (2d Cir.1979). But the probability of guilt must be very high if we still agree with Blackstone that "it is better that ten guilty persons escape than that one innocent suffer." 4 William Blackstone, Commentaries *358.

The significance to Sadiq of the requirement that the government prove the precise charge is evident from the Sentencing Guidelines that would be applicable if the verdict stands, because a member of the conspiracy, no mater how small her role, is chargeable with the entire twenty-eight pounds of heroin seized. The guidelines would thus require a minimum sentence of imprisonment of at least 188 months.

The critical weakness in the government's proof is that Sadiq's act of sending the money transfer has not been shown beyond a reasonable doubt to have been connected with the conspiracy. The failure to establish this link between the defendant's actions and the conspiracy charged distinguishes this case from others in this circuit. *See, e.g., United States v. Zambrano*, 776 F.2d 1091 (2d Cir.1985) (conviction affirmed); *United States v. Di Stefano*, 555 F.2d 1094, 1103 (2d Cir.1977) (conviction reversed); *United States v. Nusraty*, 867 F.2d 759 (2d Cir.1989) (conviction reversed).

This is not a case that depends on the jury's assessment of the credibility of the witnesses. For purposes of this motion there is no dispute as to the evidentiary facts. The issue turns on whether a reasonable juror should be justified in drawing inferences from those facts to conclude that the proposition that Sadiq was a member of the specific conspiracy was true beyond a reasonable doubt. The court decides that the jury was not so justified.

This court can find no distinction in principle between this case and *United States v. Gaviria*, 740 F.2d 174 (2d Cir.1984). Indeed, the inferences the government sought to draw with respect to the defendant there seem far stronger to this court than the inferences on which the government relies here.

The motion to set aside the verdict and to enter a judgment of acquittal is granted. So ordered.