604 So.2d 236 (1992)
ESELIN-BULLOCK & ASSOCIATES INSURANCE AGENCY, INC., f/k/a Eselin Real Estate and Insurance Agency, Inc.
v.
NATIONAL GENERAL INSURANCE COMPANY and National General Fire and Casualty Insurance Company.
No. 07-CA-59635.
Supreme Court of Mississippi.
June 3, 1992.
Rehearing Denied August 12, 1992.
*238 David C. Frazier, Gordon Myers Frazier & Roberts, Eddie C. Williams, Krebs & Williams, Pascagoula, for appellant.
Michael S. Allred, Allred & Donaldson, Wes W. Peters, Upshaw Williams Biggers Page & Kruger, Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
SULLIVAN, Justice, for the Court:
This suit was initially filed by Eselin-Bullock on December 23, 1986. National General responded with a Motion to Dismiss or in the Alternative for Summary Judgment. Following a hearing on the matter the Hon. Robert T. Mills entered an order overruling National General's motion on March 6, 1987. National General then filed its consolidated answer and defenses on March 10, 1987.
Trial began in the case on July 11, 1988, before the Hon. Darwin M. Maples but was recessed until July 25, 1988. At the suggestion of the trial judge a second Motion for Summary Judgment and/or Partial Summary Judgment was filed and when the court reconvened on July 25, 1988, the motion was heard and granted on the issue of punitive damages.
At the close of the plaintiff's evidence a directed verdict was entered for National General. Eselin-Bullock thereafter filed a Motion for New Trial or in the alternative, Relief from Judgment, on August 16, 1988. An Order of September 2, 1988 overruled this Motion.
Eselin-Bullock subsequently perfected an appeal to this Court and assigned the following as error:
1. The Court erred in granting the directed verdict in favor of the defendant;
*239 2. The Court erred in granting partial summary judgment in favor of the defendant; and
3. The Court erred in not allowing testimony of the plaintiff regarding:
a. the response of plaintiff's insureds concerning notices of cancellations sent by defendants;
b. the average retention rate of homeowner policies of insurance; and
c. the extent of actual damages sustained by the plaintiff.
Eselin-Bullock is an insurance agency that solicits for various companies, one of which was National General. Eselin-Bullock was particularly interested in National General because it was a strong company that offered three year homeowner policies at a lower cost than its competitors. The two companies entered into an Agency-Company Agreement on June 29, 1983.
This agreement provided that National General would not cancel any policy that had been in effect for sixty (60) days except (1) for non-payment of premium or non-report of the basis of premium or (2) when in the exclusive opinion of National General there was an increase in hazard and/or a material change in risk or a misrepresentation or non-disclosure to National General, at the time of acceptance, of a material fact, which was in conflict with the underwriting rules of the company. The agreement further provided that it would terminate automatically (1) if Eselin-Bullock's license or certificate of authority was cancelled or not renewed, (2) on the effective date of sale or transfer of Eselin-Bullock's business, (3) upon either party giving at least sixty (60) days advance notice to the other, or (4) immediately upon either party giving written notice to the other in the event of abandonment, fraud, insolvency, or gross and willful misconduct of the other party.
All was well under the agreement until Hurricane Elena struck the Mississippi Gulf Coast in 1985. Following the extensive damage of this hurricane, National General anticipated that the cost of reinsurance would be prohibitive and decided to discontinue writing property insurance in the counties where M.I.U.A. was available and to cancel existing policies at their renewal or anniversary dates beginning January 1, 1986. (M.I.U.A. is a form of insurance also called the beach plan, which is more or less an assigned risk type of coverage. In other words, those who could not purchase coverage elsewhere could obtain lesser coverage for a higher premium under the beach plan.) A letter advising Eselin-Bullock of this intent was sent by National General on September 24, 1985. This change in National General's policy affected Eselin-Bullock's business in Jackson, Harrison, George, Hancock, and Pearl River Counties. All existing policies in these counties were to be cancelled in 1986 but Eselin-Bullock could still write policies in other areas of Mississippi where it was licensed to do business.
National General began sending notices of cancellation to the affected insureds, with copies to Eselin-Bullock, on January 1, 1986. In these notices National General stated that the policies were being cancelled because Eselin-Bullock no longer represented National General. Eselin-Bullock attempted to obtain replacement insurance for its cancelled insureds, but was limited in this endeavor by the number of companies for which it solicited and because some of its prior customers chose not to use Eselin-Bullock any longer. Eselin-Bullock also sent letters to its cancelled insureds in an attempt to protect its reputation with its customers.
Eselin-Bullock claimed that National General tortiously breached the Agency-Company Agreement when it terminated Eselin-Bullock's insureds' policies for reasons not contemplated by the agreement. Eselin-Bullock further alleged they were defamed by National General's letter of September 24, 1985.

I.

DID THE COURT ERR IN GRANTING A DIRECTED VERDICT IN FAVOR OF THE DEFENDANT?
When a defendant moves for a directed verdict at the close of the plaintiff's *240 case in chief, the circuit court must consider evidence before it at the time in a light most favorable to the plaintiff, giving the plaintiff the benefit of all favorable inferences that reasonably may be drawn from that evidence. Benjamin v. Hooper Electronic Supply Co., Inc., 568 So.2d 1182, 1187 (Miss. 1990).
This Court must review a motion for a directed verdict in the light most favorable to the party opposing the motion. Benjamin, 568 So.2d at 1187.
Credibility determination, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.
Benjamin, 568 So.2d at 1187, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 216 (1986).
Tortious breach of contract requires, in addition to a breach of contract, some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort. Southern Natural Gas Co. v. Fritz, 523 So.2d 12, 19-20 (Miss. 1987), cert. denied 493 U.S. 889, 110 S.Ct. 232, 107 L.Ed.2d 183 (1989).
Considered in the light most favorable to Eselin-Bullock, the facts and inferences point to a breach of the Agency-Company Agreement by National General by virtue of its cancellation of policies for reasons other than those allowed by the terms of the agreement. Policies that had been in effect for sixty days were being cancelled and there had been no non-payment of premium or non-report of the basis of premium, no misrepresentation or non-disclosure of a material fact at the time of acceptance, and no apparent increase in hazard and/or material change in risk, although this last is subject to the exclusive opinion of National General.
While National General claims that the increase in hazard or material change in risk was its inability to obtain reinsurance coverage, there is nothing in the record to support that argument. National General alleged only that it anticipated that reinsurance would be cost prohibitive if it was indeed available. Hurricane Elena could hardly be the event which caused an increase in hazard or material change in risk as the possibility of hurricanes existed at the time the coverage became effective, and Hurricane Elena did nothing to increase the hazards or risks involved in insuring coastal homeowners.
National General takes the position that it has the complete and unfettered discretion to determine whether there has been a change in risk. Although the agreement states that whether an increase in hazard or material change in risk occurs is left to the exclusive opinion of National General, certainly it must be an increase in hazard or material change in risk as contemplated by the contract. The contract is ambiguous on this point and offers no further clarification.
The risk insured by the policies which were cancelled was damage to the insured homes. The anticipated high cost of available reinsurance does not increase the risk of damage to the homes insured. Giving Eselin-Bullock the benefit of all favorable inferences, as we must in reviewing a directed verdict motion, there was no increase in hazard or material change in risk such that the risk insured by National General was materially increased. It follows that National General breached its agreement with Eselin-Bullock.
Even if the prohibitive price and unavailability of reinsurance is found to constitute an increase in hazard, as alleged by National General, the only evidence that reinsurance was unavailable was National General's anticipation of such. If the cost of acquiring reinsurance would have severely affected National General's solvency and ability to pay future claims, a material change in risk might have occurred. However, at the close of Eselin-Bullock's case it was too early to make such a determination.
*241 In addition to a breach of contract we must find some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort in order to support a claim for tortious breach of contract. Fritz, 523 So.2d at 19-20. Punitive damages, although not usually recoverable in breach of contract cases, are available when the breach results from "an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." Blue Cross & Blue Shield v. Maas, 516 So.2d 495, 496 (Miss. 1987).
In Fritz, punitive damages were sought based on an allegation of tortious breach of contract. In discussing whether a tortious breach of contract existed, this Court said "we are of the opinion that the facts of this case do not justify punitive damages." Id. at 20. This Court may well reach the same conclusion in this case when it has all the facts before it, which in the present posture of the case it does not have.
Viewed in the light most favorable to the plaintiff, National General intentionally cancelled homeowner policies with knowledge that it was breaching its Agency-Company Agreement. This is an intentional wrong and it is a question of fact as to whether or not it rises to the level necessary to constitute an independent tort which would justify punitive damages.
The trial court committed reversible error when it directed a verdict on this issue.
A claim of defamation requires a false and defamatory statement concerning the plaintiff, an unprivileged publication to a third party, fault amounting at least to negligence on the part of the publisher, and either actionability of the statement irrespective of special harm or existence of some special harm caused by publication. Blake v. Gannett Co., Inc., 529 So.2d 595, 602 (Miss. 1988). It must be pointed out that here the defamation charged is not against a public person but a private person and therefore, requires a much less extreme standard for purposes of allowing the plaintiff to prove its case. "In Gertz v. Welch, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the court held the First and Fourteenth Amendments require at a minimum a showing of negligence before a private figure may recover an award of actual damages for libel; a public figure must show actual malice, defined as ill will or reckless disregard of the falsity of the statements made." Whitten v. Commercial Dispatch Publishing Co., Inc., 487 So.2d 843, 844 (Miss. 1986). Therefore all that is required on the part of the plaintiff in this case to pursue the claim for defamation is a showing of negligence by a preponderance of the evidence.
In this state a communication is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Gulf Publishing Co., Inc. v. Lee, 434 So.2d 687, 694 (Miss. 1983); and Manasco v. Walley, 216 Miss. 614, 63 So.2d 91, 95 (1953).
Whitten, 487 So.2d at 845.
Regarding the question of the substantial truth of the statement made in the letter of cancellation, "the agency no longer represents National General," the defendant claims that the representation is true and the plaintiff adamantly denies that the representation is substantially true. The question as to what was or was not implied in the notice of cancellation is a question of fact for a jury to determine.
Giving Eselin-Bullock the benefit of every inference, a reasonable jury could find that the statement at issue was defamatory on its face and defamed Eselin-Bullock without either innuendo or inference.
Therefore, it was error to grant the directed verdict regarding the defamation claim.

II.

DID THE COURT ERR IN GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANT?
Rule 56(c), M.R.C.P., allows summary judgment where there are no genuine issues of material fact such that the moving *242 party is entitled to judgment as a matter of law. As has already been established above, material issues of fact were present and when these evidentiary matters are viewed in the light most favorable to the non-moving party, triable issues of fact existed on the question of punitive damages and the lower court's decision to grant summary judgment was error. Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983).

III.

DID THE COURT ERR IN NOT ALLOWING TESTIMONY OFFERED BY THE PLAINTIFF?
Objections to the testimony proffered by Mr. Eselin regarding phone calls received from clients in response to National General's cancellation notices were sustained on grounds of hearsay and relevancy.
Relevant evidence includes any evidence which tends to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. M.R.E. 401. The reactions of former insureds upon learning that their coverage was cancelled and that other coverage would be more expensive or unavailable would have had bearing on the existence of any fact or consequence to the determination of the defamation claim. That former insureds thought Eselin-Bullock was going out of business and that clients blamed Eselin-Bullock for their cancellations, as well as the testimony preserved in the second proffer, is relevant to the defamation claim of a private party as it does tend to make the existence of any fact of consequence to the determination of the claim more or less probable. The trial judge incorrectly sustained objections to the relevancy of this testimony.
Hearsay is a statement, other than one by the declarant while testifying at trial, offered to prove the truth of the matter asserted. M.R.E. 801(c). "If the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then, the statement is not hearsay." M.R.E. 801, Comment. Eselin-Bullock claims that the attempted testimony is not hearsay because it was not offered to prove the truth of the matter asserted and that if hearsay, the proffered testimony falls under the "other exceptions" of M.R.E. 803(24).
The matters asserted by the out-of-court declarants (Eselin-Bullock clients), that they were upset and blamed Eselin-Bullock for their cancellations because of the wording of the notices and that they thought Eselin-Bullock was going out of business, are indeed out of court statements as opposed to statements made by the declarant while testifying at trial. These statements were not offered to prove that the clients were truly upset, that the clients in truth blamed Eselin-Bullock for their cancellations, or that the clients in truth believed that Eselin-Bullock was going out of business. These statements were offered simply to prove that such statements were made by Eselin-Bullock clients in response to cancellation notices. There is no issue about the truth of the matter asserted, therefore, the statements are simply not hearsay.
Eselin's speculation regarding what clients may have thought upon receipt of cancellation notices is also not hearsay. These statements were made by the declarant while testifying at trial, and were not the repetition of statements that had been made out of court.
The trial judge erred in sustaining objections based on hearsay. We are of the opinion that the learned trial judge committed reversible error in granting the directed verdict in favor of National General and in granting the partial summary judgment in favor of National General. We, therefore, reverse his decision and remand this case for trial on the merits.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON and PITTMAN, JJ., concur.
*243 BANKS, J., dissents with separate written opinion.
McRAE, J., not participating.
BANKS, Justice, dissenting:
I disagree with the majority that the hearsay evidence concerning what a customer said was offered for the fact that it was said. The fact that it was said has no value whatever. Bullock was compelled to prove that his reputation was injured. Whether he was diminished in the eyes of the customer is what is relevant. If these clients were not truly upset, if they did not truly blame Eselin-Bullock for their cancellations, if they did not truly believe Eselin-Bullock was going out of business, then what is the point of relating their alleged telephone conversations. It was incumbant upon Bullock to produce the testimony of the customer or some witness to establish any diminution in reputation. The judgment should be affirmed.